Curia, per

Earle, J.
Whatever may be 'said about public policy, and whatever may be the future consequences, it is now a settled point, that a free person of colour, by the laws of this State, may take and hold, convey by deed, dispose of by will, or transmit to his heir at law, both real and personal estate. Barbara Holmes, the ancestor of the plaintiffs, and under whom the defendant claims, was a slave at the time of the devise in question. The plaintiffs who bring this action to recover the land, must shew a perfect title in themselves. In order to do this, they must shew, 1,. that Barbara, although a slave of the testator at his death, could take, and did take, under the will; or 2, that the remainder to the plaintiffs is good, by way of executory devise, although the devise of the life estate to Barbara, may be void as to one incapable of taking; 3, that her marriage with Holmes was a lawful and valid marriage, which rendered the issue legitimate, and capable of taking the remainder limited to them ; 4, that the codicil is not a revocation of the will, so far as regards the remainder to the plaintiffs, but that under it Barbara ¡took ¡only a .life estate, subject to the same limitations and conditions which are annexed to the-devise in the will itself.
Seyeral of these propositions involve points that are not free from difficulty, and on which there might be some diversity of opinion, but as the judgment of the majority of the court has been formed from a construction of the codicil alone, it has been ¿deemed unnecessary to consider any of the other questions raised by the plaintiffs’ case, or to express any opinion upon them. If in fact the will, as far as regards the remainder to the plaintiffs, is revoked by the codicil, then it is needless to inquire whether Barbara could take her freedom and the devise by the same instrument ; or whether the remainder must take effect by way of exe-cutory devise ; or to consider the validity of the defendant’s marriage with Holmes. The civil status of a person circumstanced *487 as Barbara was, especially in regard to her capacity to take and hold property, is not easy to define. A slave may acquire property, but as he cannot hold, it enures to the benefit of the owner. At the date of this will there was no restraint on the power of manumission, and Barbara was lawfully made free, exempted from the control, and placed beyond the reach of the heir at law. Freedom, when bestowed upon a slave by will, is usually spoken of as a legacy, which requires the assent of the executor as other bequests. The analogy is not perfect, and I am not sure that some confusion of ideas is not created by the use of the same terms, in reference to subjects which seem to be of different natures. If property be given to a slave the master may seize it presently. But freedom bequeathed to a slave of the testator, is not only inconsistent with any claim of property in the heir a.t law, but a solemn declaration that he shall not seize or hold him as property. Should the executor withhold his assent to the legacy of freedom to the slave, could the heir at law retain him in slavery ? But in this case the testator died in 1782, and Barbara immediately went into the enjoyment of her freedom, and into possession of the land, and so remained until her death in 1830. The assent of the executor may be necessary to the enjoyment of the legacy in possession, but not so to enable it to vest., which I apprehend it did at the instant of the death, subject only to the claim of creditors, and the power of the executor to make her liable for debts. Without this, if a slave can take at all, subject to the right of escheat or to the superior claim of the master, then the devise also vested in Barbara, and as soon as from lapse of time the assent of the executor to the legacy of freedom might be presumed, and the claims of creditors to be satisfied or barred, then her title became absolute and perfect: If twenty years were necessary for this purpose, she had, after the expiration of that term, twenty eight years of quiet and undisturbed possession of the land, which would be sufficient to give her a title, as a free person of colour, against the heir at law, and all the world, unless the plaintiffs are entitled to the remainder they claim, after the determination of what they allege to have been her life estate.
In coming to a conclusion upon the construction of the codicil, we should have no difficulty if we were to confine our attention to the words of the devise. It is a gift of land to Barbara, without words of perpetuity or of limitation. The Act of 1824 *488 has furnished the rule of interpretation for such a devise. “Every gift of land by devise shall be considered as a gift in fee simple, unless such construction be inconsistant with the will of the testator, expressed or implied.” The word “hereafter,” in the first part of the section, is held to relate to the time of adjudication, in connection with the word “considered,” and not to the date of the devise. And therefore wills executed before, as well as since the Act, have been construed according to its provisions. Hall et al. vs. Goodwyn et al. 4 M’Cord, 442; Dunlap vs. Crawford, 2 M'C. Ch. R. 171. The ground of the argument for the plaintiffs is, that such construction is inconsistent with the will of the testatator, as implied from the context of the instrument, and the views which have been urged upon the court to sustain that ground are ingenious and plausible. Admitting the rule to be that the intention of the testator is the object of inquiry, and when ascertained is to govern in the construction, yet when the words used are plain and unambiguous, and have a certain and definite legal import, it is not enough for the plaintiffs to make out a case that is plausible or probable. The intention to give the words a different and more limited meaning, must be made clear and manifest. A majority of the court thinks that this has not been done. Without minutely reviewing all the grounds of argument which have been taken for, the plaintiffs, I will briefly present the reasons for supposing that the legal interpretation of the words is supported by the apparent intention of the testator ; and in doing so I shall notice incidentally some of the arguments of the plaintiff's counsel.
In the will, the testator devises in consecutive clauses, first to Judith, then to Barbara, each one half of certain lands containing 13 or 1400 acres, to themselves for life, with the power of disposing, and in default, with remainder over. The language of the two clauses is identical, except the names of the devisees and the dis-cription of the lands. In the codicil the testator uses the following language. “I do hereby revoke that part of my will wherein I bequeathed to the within named Judith and Barbara the three tracts of land between them.” Had the testator stopped here, and made no further devise in favour of either, can there be a doubt that the original devise, both life estate and remainder, would have been gone 1 But the testator proceeds in the next paragraph as follows. “I bequeath to the said Judith the place whereon she now lives, adjoining John Newman’s land, contain *489 ing three hundred acres, under the contingencies, limitations and restrictions mentioned in my said will.” Had he after-wards made no provision for Barbara, it is equally clear that the claim of the plaintiffs, to the remainder under the original de vise, would have been extinguished along with the life estate of their mother. The whole of the two clauses in favour of Judith and Barbara, were expressly revoked ; and the whole subject matter was striken out of the will. The testator then inserts seven new clauses in the codicil, in four of them revoking so many clauses of the former will, and in the others bequeathing three new legacies. He then proceeds as follows ; “I revoke that part of my said will wherein I leave to the said Barbarba that land below Silver Bluff, being a part of three tracts of land, and in lieu thereof, I leave her that whole tract adjoining the point, containing upwards of three hundred acres, the lowermost part of the said land. The land between the two parcels I left to the said Judith and Barbara, I leave to the said Thomas, son of the said Rachael Dupee.” Inasmuch as the testator, throughout the will, when he meant a life estate had used the appropriate words of' limitation, and in like manner when he meant an estate in fee had used words of perpetuity, it is argued that the devise to Barbara in the codicil by the words, “I leave her that whole tract,” is to be regarded as a mere substitution of one portion of land for another, to be held for life only, and subject s to the limitations of the original divise; and that this is plainly implied from the context. As he used words then deemed appropriate to convey a life estate, it is supposed he meant no more. But although words of inheritance previous to 1824, in one of our courts of appeal, were held necessary to create a fee, in the other they were not. . And the settled law now is that words of inheritance were not necessary for that purpose, even in 1778; but that the words of the codicil, without more, created a fee. The other ground of implying the intention that the devise in the codicil should be for life and subject to the limitations of the will, would have great force, were it not met by an argument on the other side equally apparent on the face of the will, by which it is neutralised, if not destroyed. As I have shewn, by the first clause of the codicil, the clauses in the will containing the original devises to Judith and Barbara were entirely revoked, in words at least; when the testator proceeded to devise other lands to Judith, to be held on the same *490 terms and limitation, he considered it necessary to annex words plainly and unequivocally expressing that intention, “under the contingencies, limitations and restrictions mentioned in my said will.” If the subsequent devise to Barbara had followed in immediate juxta position, the argument for the plaintiffs would have been strengthened. But after introducing many clauses on different subjects, he gives her in lieu of the land devised to her in the will, “that whole tract,” &c. without more. If the words of restriction had not been annexed to the divise to Judith in the codicil, she would have taken a fee simple. Because the testator intended that she should not take a fee simple, but only a life estate, he annexed them. If he intended that Barbara should take no more, it was equally necessary to annex the words subjecting her devise to the former limitations. And it is a strange argument to say, that because he omitted the words, he intended to annex the meaning. So likewise of the devise to Thomas, son of Rachel Dupee, of the land between the two parcels, the words plainly import a fee. Are they, too, to be construed as creating not only a life estate, but as subjecting it to' the limitations of the original will 1 And if so, what limitations ? It is more rational to conclude, as the testator seems to have known very well what he -was about, and to have understood what words were necessary to convey his meaning, that if he had intended the last devise to Barbara to be for life only, and to subject it to the limitations of the former devise, he would have expressed his intention in unequivocal language. If his object was merely to make an additional provision for Thomas, this would have been easily accomplished by devising him the inter-' mediate tract, without further altering the clause as to the others. It is supposed that the argument for the plaintiffs is much strengthened by this consideration, that the remainders in the will are not affected by the codicil, as to five of the devisees, as to each of whom Barbara might have taken as survivor, although neither could have taken as survivor to her. Besides the land described in the clause of revocation, Barbara, as well as each of the other children, had a devise of certain ceded lands in Georgia. But by the same codicil all these devises of ceded lands are revoked; and the testator bequeaths to each in lieu thereof a legacy of fifty pounds sterling. If then, the other devise to Barbara was wholly revoked by the codicil, she took no land under the will. And it may well be questioned whether *491 her right of survivorship in regard to the lands, was not gone. But the answer to this suggestion may be found in the fact, that by a subsequent codicil the testator bequeaths to Barbara, her heirs and assigns, five slaves and their issue, in addition to her former legacy under the will. In these the other legatees had no interest as survivors, although her own right in regard to their legacies remained unimpaired. We cannot therefore undertake to say that the testator, on reconsideration, may not have intended in favour of Barbara a more beneficial provision than was made at first. In regard to the negroes he has certainly so intended ; and in regard to the lands, as he used words legally importing that intention, we have no sufficient evidence from the context, either in regard to language, arrangement or circumstances, to satisfy us that his intention was otherwise. We are therefore of opinion, that the codicil was an entire revocation of the original devise, under which the plaintiffs claim the remainder.; that the limitations in favor of the plaintiffs do not attach to the devise in favor of Barbara in the codicil; and that they cannot recover in this action, whatever may be the estate of Barbara, or howsoever acquired ; whether she took under the codicil an estate for life ox-in fee, or as a free coloured person has acquired title by possession. The motion is refused, and the judgment of the circuit court is affirmed.
Gantt, Richardson and Evans, Justices, and Johnston and Dunkin, Chancellors, concurred.
Butler, J. having been of counsel in the cause gave no opinion.
The opinion of Chancellor Harper was, by some means, lost or mislaid, so that a copy could not be furnished the reporter, to present with the report of this case. The annexed summary, however, of his opinion, dissenting from a majority of the court, has. been very kindly furnished the reporter by his Honor, judge O’Neall, and will present the points maintained by the chancellor. Rep.
Harper, Ch. maintained, 1st, that a slave could acquire and hold personal property.
2d. That the slave could both take freedom and property, by the same instrument, a will.
3d. That marriage was merely a civil contract, and that, *492 therefore, it was good and legal, between a white person and a free negro.
4th. That the descendants of a free negro, born in lawful wedlock, might take as devisees, under tile description of issue, or as heirs.
5th. That the limitation in the will extended to the codicil, and was good, and under it the plaintiffs were entitled to recover.
O’Neall, J.
I agree with Chancellor Harper in all the conclusions to which he has come; and generally in the reasons which has led him to them. But on the first question made, I do not agree to his reasoning in all respects. That a slave is to be regarded as on the footing of an alien enemy, is not-in my judgment correct. Slavery in England, and in many other countries, originated out of that hard condition being imposed on captives taken in war. But civilization long since wiped off this stain on contests between nation and nation. The captive now is no where, except among savages, regarded as a slave. In this State, the only slaves from captivity were the few Indians who in the early settlement were thus treated. The great body of slaves are those who have been acquired by purchase. So far as human beings can be considered as goods and chattels, they have been and must continue to be so regarded.
That that is their legal position is not questioned, but it is supposed that they must have the consideration of men laboring under temporary legal disabilities, in order to keep up the harmony of the law. That there is a great deal of truth in this genera] position, I freely concede. But I do not think that they can be regarded as laboring under the disability of an alien enemy. For remove the disability, and what must be the legal result? they then stand as all other men possessed of their political, as well as civil rights. To emancipate would be to naturalize a slave, if he is legally to be regarded as an alien enemy. This never can be the result in South Carolina. The negro or his descendnat is not, cannot be, a citizen. The true notion seems to me to be that the negro slave is to be regarded as a being of an inferior caste, not having, and never to have, any political status : but capable of acquiring and holding property by the consent of his master.Every acquisition thus made, is for the master’s benefit. For if it either feeds or clothes him, it so far relieves the master from expense on his account. But when we refer to the Act of 1744, *493 and every Act for the regulation and government of slaves passed since, we find that it was no novelty to the legislators of this State that slaves should own property.
For the present, this general statement of my views on this portion of the subject will be sufficient. Consistently with them, I think that the consent of the master to the possession of property by his slave Barbara until she became free, is sufficiently manifested by his will. There would, however, be much difficulty in saying that she could thus acquire real estate. But my mind is relieved from all difficulty by two considerations. 1st, I hold that her freedom and estate both took effect at the same instant, the death of the testator. For the assent of the executor to the freedom of Barbara, made her free at and from his death. 2d. On looking to the will it will be seen that the executors are made “ guardians” of the real and personal estate devised. This constituted them trustees to take and to hold, until all disabilities (if any existed) were removed.